The deceased, a widow and childless, left her estate to her brother, her only next of kin. The will bears date December 6th, 1927. The testatrix was committed to an insane asylum the following September where she died in November, 1931. Frances E. Kennedy, an intimate friend and residuary beneficiary of an earlier will, is the contestant. The will was admitted to probate by the surrogate of Essex county and the contestant appealed. The orphans court sustained the surrogate and the contestant appealed to this court.
The testatrix suffered from a kidney disorder and hardening of the arteries, producing high blood pressure. The first manifestation was in January, 1926, while visiting at the home of the contestant, when she, it is said, had a slight stroke. She recovered and resumed her normal manner of living as much as her gradually destructive affliction would permit; feeling well for spells and then a set-back, as is the course of the disease. She was in the country, sick, in *Page 624 
September, 1927, and upon her return took board at the home of a Mrs. Gorman in East Orange, because she felt unequal to again take up household cares in her home, which was large. She made the disputed will while living at Mrs. Gorman's. Shortly before Christmas she went to live with her brother. In January a nurse was put in charge. Her condition continued downward until she was committed eight months later for hospital treatment where she died three years later.
The will is technically attested and was executed in accordance with the statutory requirements, and objection to its probate for deficiency in that respect is abandoned.
Proof of incompetence to execute a will is not to be found in the record. On the contrary, the evidence puts it beyond question that the testatrix was possessed of her mental faculties and exercised them intelligently in disposing of her estate. Even the contestant's testimony of her intercourse with the testatrix, upon which she based her opinion of incapacity, is persuasive that the testatrix was qualified. Arterio sclerosis, hardening of the arteries, has, of course, its effect on the brain, progressively, as it has on the rest of the body, resulting sometimes in hemorrhages of the brain, which, when slight, are only of passing dimming of the mental faculties and it may be (there is no proof) that the testatrix suffered attacks in her periods of illness, but nowhere in the testimony is there anything leading to the belief that there was any material impairment up until the will was executed, much less incapacity. The testatrix had spells of depression and there were hysterical outbursts, but she was foredoomed and knew it, and despondent and perhaps despairing to the point of accelerating the inevitable, it is said, attempted self destruction by gas. If it be true, the effort was deliberate and, followed by remorse, is powerful evidence of mental stamina — misdirected. Compassionately we speak of the victims as insane, but it takes grit to commit suicide.
Of undue influence, there is no evidence of coercion nor of circumstances from which it may be inferred that the will *Page 625 
was not the spontaneous act of the testatrix, calling upon the beneficiary to explain and to overcome the presumption of undue influence. There was blood relation, but none of trust and confidence. In fact, if we believe the contestant's story, the testatrix distrusted her brother. The will was drawn by a lawyer who, accompanied by the beneficiary, called at the boarding house to have it executed and after an explanation of its contents, the testatrix indicated that she did not care to sign it then. She took the document, read it, understood it, and later in the day executed it in the presence of Mrs. Gorman and a boarder. The brother was not present. Who gave the scriviner instructions to draw the will, he cannot recall, but his impression was that the beneficiary was present. And why the testatrix postponed the execution, except to read the instrument at her convenience is not shown. It does appear that she was self-possessed and deliberate in giving expression to a quite natural desire of leaving her earthy possession to her kin — her only brother. It would have been more satisfying to the court had all the attending circumstances been disclosed, but as the established circumstances did not make a case calling for an explanation, the beneficiary was within his rights in remaining silent.
Shortly after her illness at the contestant's home in 1926, after the contestant's attentions and kindness, the testatrix made a will making provisions for the brother and giving the residue of her estate to the contestant. A year later she made another with a similar residuary disposition. Now, because of a change of heart and a reversion to a natural impulse the testatrix changed her mind, this litigation, to defeat her will, was brought on with little or no justification. The conclusions of the orphans court are concurred in and decree appealed from will be affirmed.
 *Page 1